No. 65,729

CEDAR CREEK PROPERTIES, INC., and R. J. ANDERSON, *Appellants*, v. BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, and CITY OF LENEXA, *Appellees*.

(815 P.2d 492)

Opinion filed July 12, 1991.

*John J. Gardner*, of Watson, Ess, Marshall & Enggas, of Olathe, argued the cause, and *Margaret A. Gallagher*, of the same firm, was with him on the briefs for appellant Cedar Creek Properties, Inc.

*John Anderson, Jr.*, of Overland Park, argued the cause and was on the brief for appellant R. J. Anderson.

*LeeAnne Hays Gillaspie*, of Johnson County Legal Department, of Olathe, argued the cause and was on the brief for appellee Board of County Commissioners of Johnson County, Kansas.

*R. Scott Beeler*, of Gage & Tucker, of Overland Park, argued the cause and was on the brief for appellee City of Lenexa.

*James M. Kaup*, of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by neighboring landowners of the decision of the Board of County Commissioners of Johnson County (BOCC) approving Resolution No. 86-88, a request by the City of Lenexa, Kansas, for island annexation of land pursuant to K.S.A. 12-520c.

This case was previously considered by this court in *Cedar Creek Properties, Inc. v. Board of Johnson County Commissioners*, 246 Kan. 412, 789 P.2d 1170 (1990). In that appeal, this court determined that the landowners involved in this case had standing to participate in the decision-making process and appeal. On remand, the trial court determined that the use to be made of the land could not be challenged in the annexation proceeding and affirmed the BOCC decision to allow annexation.

By way of background, Holland Corporation (Holland) is the owner of a tract of land approximately 328 acres in size located west of Highway K-7 and immediately north of Highway K-10 in Johnson County, Kansas.

Prior to the annexation proceedings, the BOCC passed a resolution, pursuant to K.S.A. 12-715b, granting extraterritorial zoning jurisdiction to Lenexa on a portion of land in the county near Lenexa, including the Holland tract. Holland filed an application with the Lenexa planning commission for a special use permit for the tract, seeking to operate a limestone quarry. Protest petitions to the special use permit were filed by substantially all of the property owners within 200 feet of the boundaries and by some 260 other property owners. Lenexa granted a permit and that decision was appealed. That case is pending in the trial court and is apparently stayed pending the outcome of this proceeding.

Holland then petitioned Lenexa for island annexation pursuant to K.S.A. 12-520c. Lenexa approved Holland's request by resolution and the matter was submitted to the BOCC. The BOCC held a public hearing, at which the chairman, Murray Nolte, requested that those making presentations at the hearing not get into a discussion of the zoning of the tract as this was a question of annexation only and that the zoning or use was a matter for the City of Lenexa. The BOCC unanimously adopted the resolution approving annexation.

Plaintiffs are property owners (landowners) with borders in common with the Holland tract. After the BOCC's vote, they filed separate appeals from the decision. The cases were consolidated by the trial court. Landowners alleged that under K.S.A. 12-520c, the BOCC was required to consider the proposed use of the property and erred in failing to do so.

The trial court dismissed the petition, holding that the landowners had no standing to appeal. The Court of Appeals affirmed the dismissal. 13 Kan. App. 2d 734, 779 P.2d 463 (1989). We reversed. 246 Kan. at 418.

The case went back to the trial court and motions for summary judgment were filed by both sides. The trial court found for Holland and this appeal followed.

K.S.A. 12-520c provides, in part:

"(a) The governing body of any city may by ordinance annex land not adjoining the city if the following conditions exist:

"(1) The land is located within the same county as such city;

"(2) The owner or owners of the land petition for or consent in writing to the annexation of such land; and

"(3) The board of county commissioners of the county find and determine that the annexation of such land will not hinder or prevent the proper growth and development of the area or that of any other incorporated city located within such county.

. . . .

"(c) . . . Any owner or city aggrieved by the decision of the board of county commissioners may appeal from the decision of such board to the district court of the same county in the manner and method set forth in K.S.A. 19-223. Any city so appealing shall not be required to execute the bond prescribed therein."

Landowners argue that implicit in the requirement that the BOCC "find and determine that the annexation of such land will not hinder or prevent the proper growth and development of the area or that of any other incorporated city located within such county" under subsection (a)(3) is that the board must consider the proposed use to which the land will be put.

The trial court found in its memorandum decision:

"All parties having moved the Court for summary judgment this case can be resolved as a matter of law if no material and controlling fact is left to be determined.

"The construction of 12-520c, which deals with 'island annexation' proscribes the issues. Interpretation of this section is a matter of first impression

save for the question of 'standing.' Section 12-520c casts a burden on the Board of County Commissioners far different from that of K.S.A. 12-521.

"Advisability of annexation of land to a municipality is a legislative rather than a judicial question. Courts may not substitute their judgment for that of a governing body.

"If K.S.A. 12-520c is thought to be more than an objective standard to be met in the exercise of delegated legislative power it is evident that in this instance the Board of County Commissioners did in fact receive evidence and hear arguments with reference to prospective land use and, at the urging of defendants, rightly considered the question to be speculative and under the jurisdiction of the defendant, City of Lenexa, by virtue of an extra territorial zoning authority grant by the Board of County Commissioners in March of 1987, which plaintiff did not appeal.

"It is presumed that government acts in good faith and without deceit. The objecting land owners have a clear remedy to the zoning actions of the City of Lenexa that aggrieve them. In fact, such a zoning appeal is now pending in another division of this court.

"It is further presumed that all relevant evidence and arguments submitted to the Board of County Commissioners was considered. The matter of land use of the subject tract was extensively brought to the attention of the board, which thereafter made all necessary findings to comply with the statute. Had the Board of County Commissioners granted the annexation with a provision as to future land use it would have clearly exceeded its authority.

"If the Board of County Commissioners or the court on review be compelled to sit in judgment of proposed land use under K.S.A. 12-520c the zoning laws a[re] rendered meaningless.

"The memorandum of the Board of County Commissioners is adopted and incorporated herein by reference as the findings and conclusions of this court. The oral argument of Ms. Gillaspie is clear and convincing.

"Plaintiffs having made no threshold showing of this 'annexation' hindering growth, Resolution No. 86-88 should be and is hereby upheld.

"Summary judgment to be entered in favor of the defendant, Board of County Commissioners of Johnson County, Kansas, effective this date at plaintiffs' cost."

In a journal entry responding to plaintiff's motion to alter or amend the judgment, the court added that it had not considered the legality of the BOCC's grant of extraterritorial zoning authority to Lenexa.

Prior to 1974, the method of annexation of land pursuant to statute was limited. Under G.S. 1949 13-202, a city could unilaterally annex land by ordinance if the land adjoined the city and if one of three conditions was met: the land was platted; the land lay within or mainly within the city; or the tract did not

exceed 20 acres and had two-thirds of any line of boundary touching the boundary line of the city.

The only challenge available on appeal was that the city had not followed statutory authority because, traditionally, the annexation of land by a municipal corporation was viewed as a legislative function. As such, "[t]he wisdom, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. The basic function and duty of the courts is to determine whether a city has statutory authority and whether it has acted thereunder in passing an annexation ordinance." *State, ex. rel., v. City of Overland Park*, 192 Kan. 654, Syl. ¶ 3, 391 P.2d 128 (1964) (interpreting G.S. 1949, 13-202).

The basic framework of G.S. 1949, 13-202 was to continue. (There were other special annexation laws, but they are not relevant for our purposes.) In 1967, 13-202 was modified by adding additional circumstances by which land could be annexed, and was renumbered as K.S.A. 1967 Supp. 12-520. L. 1967, ch. 98, § 2. Generally, the land had to adjoin the city. Under this statute, a city could annex unilaterally if one of seven conditions was met.

The legislature then added K.S.A. 1967 Supp. 12-521, which provided that if land could not be annexed pursuant to K.S.A. 1967 Supp. 12-520, the board of county commissioners could be petitioned by a city for permission to annex the land. L. 1967, ch. 98, § 3. The statute also provided that the board must give notice of the hearing by publication and that no tract larger than 20 acres could be annexed if the owners thereof filed a written protest. Most importantly, at the hearing, the board was to "hear testimony as to the advisability of such annexation, and if said board shall be satisfied that such annexation or the annexation of a lesser amount of such land will cause *no manifest injury* to such owners, they shall so find and grant the annexation order." (Emphasis supplied.) K.S.A. 1967 Supp. 12-521. The statute also provided that the owner or aggrieved city could appeal.

The 1967 version of 12-521 was not the subject of any reported appellate cases. In *State, ex rel. v. City of Overland Park*, 215 Kan. 700, Syl. ¶ 1, 527 P.2d 1340 (1974), the court considered the 1967 version of 12-520 and applied the traditional standard of review, that the wisdom, desirability, expedience, and advisability of the city's act should not be considered by a court. The

court also upheld the constitutionality of the annexation procedure.

Then, in 1973, the legislature made substantial changes to annexation procedure. The existing statutes were reviewed by a special committee, which recommended:

"The Committee is mindful of the following criticisms of the current law:

"(1) *Individual property owners do not have the right to challenge annexations by cities.* (K.S.A. 12-520c, enacted in 1957, provides that only the county attorney or the attorney general may challenge the validity of any city annexation ordinance.)

"(2) Farm land is sometimes indiscriminately annexed by cities either for tax purposes or to protect future expansion needs.

"(3) City services are not always extended within a reasonable time to a newly annexed area.

"(4) Annexations by cities are sometimes accomplished without proper notice to property owners affected by such annexation.

"It is the consensus of the Committee that the Kansas annexation law needs revision. *The Committee is of the opinion that the rights of individual property holders should be enhanced in order to bring about more of a balance between the public and private interests.*" (Emphasis supplied.) Proposal No. 92—Annexation, Report on Kansas Legislative Interim Studies to the 1974 Legislature, p. 92-4 (November 1973).

The committee described the structure of the new act:

"The bill would repeal all existing special annexation laws and would amend K.S.A. 1973 Supp. 12-519 *et seq.* in the following ways.

"(1) Retain the right of cities to annex unilaterally or by ordinance in some cases, but restricts this right in certain areas.

. . . .

"(3) Provides that a municipality must give notice of its intent to annex land and requires the holding of a public hearing. Notice is to include a sketch or sketches of the land to be annexed to be published in a newspaper of general circulation in the county as well as the sending of a copy of such notice by certified mail to all property owners of the area to be annexed.

"(4) Provides for the annexation of non-contiguous property if the owners of such land petition for such annexation and if the board of county commissioners approve such annexation. Non-contiguous annexations are not to be used as a base for further annexations, however, until such time as they become part of the city proper.

"(5) Requires a municipality to formulate a plan for the extension and financing of major services to the area to be annexed.

"(6) Provides that any property owner of land annexed by any city may seek recourse in the district court by challenging the authority of a city to annex and the regularity of such proceedings.

"(7) Provides that any city may petition the board of county commissioners to annex land which it is unable to annex under any conditions specified in K.S.A. 1973 Supp. 12-520 and amendments thereto. It also provides for essentially the same notice and hearing requirements in this instance as mentioned previously and for appeal by an aggrieved city or property owner in the courts." Proposal No. 92—Annexation, Report on Kansas Legislative Interim Studies to the 1974 Legislature, pp. 92-5 through 92-6.

The new laws provided for the following: K.S.A. 1974 Supp. 12-520 provided for unilateral annexation of land if one of seven conditions was met. Generally, the land had to be adjoining the city. K.S.A. 1974 Supp. 12-520a provided for notice and a hearing if land was to be annexed under 12-520. K.S.A. 1974 Supp. 12-520b provided that the city must prepare a plan describing the annexation, including extension of services and the general use to which the land was to be put.

K.S.A. 1974 Supp. 12-520c provided for annexation of land not adjoining the city. It has not since been amended.

K.S.A. 1974 Supp. 12-521, the alternate annexation procedure requiring county commission approval, was amended to include a requirement that the city file a plan similar to that required under K.S.A. 1974 Supp. 12-502b.

In *Board of Johnson County Comm'rs v. City of Lenexa*, 230 Kan. 632, 640, 640 P.2d 1212 (1982), this court said of 12-521:

"It is inconceivable that the legislature would require a city to petition a county board of commissioners and request a hearing on the advisability of annexation and require the county board to *hear testimony on the advisability* without the intention that the county board *determine* the advisability of the annexation. Under K.S.A. 12-521, the city proposes the annexation, it is up to the board to grant or deny the annexation. In carrying out its function of determining the advisability of the annexation the board is, at least in part, carrying out legislative functions as well as quasi-judicial functions and in so doing has an obligation to see that the rights of the public are protected."

In *In re Appeal of City of Lenexa*, 232 Kan. 568, 657 P.2d 47 (1983), the court expanded on the differing natures of the board's role under 12-521. The court said: "The Board thus wears two hats: When it determines *advisability*, it acts in a legislative capacity, but when it determines *manifest injury*, it acts in a quasi-judicial capacity." 232 Kan. at 575. The court went on to discuss an early Kansas statute, G.S. 1901, § 1172, which also

required the board to determine that annexation would cause "no manifest injury" and an early case, *Nash v. Glen Elder*, 74 Kan. 756, 88 Pac. 62 (1906), in which the court held that a finding of no manifest injury is a judicial function. 232 Kan. at 575.

This court then discussed the proper standard of review of quasi-judicial functions and legislative functions:

"[W]hen a district court is called upon to review the action of the board in determining the judicial issue of manifest injury, the reviewing court is limited to considering whether, as a matter of law, (1) the board acted fraudulently, arbitrarily, or capriciously, (2) the board's order is supported by substantial evidence, and (3) the board's action was within the scope of its authority. [Citations omitted.] In reviewing the district court's judgment, this court must first determine whether the district court observed the requirements and restrictions placed upon it, and then make the same review of the Board's action as does the district court. [Citation omitted.]

"The judicial review of the Board's determination of the *advisability* of annexation, however, is the review of the legislative function. The duty of the district court, and of this court on appeal, is limited to a determination of whether the Board has the statutory authority to enter the order which it made." 232 Kan. at 575-76.

In 1987, 12-521 was again amended. This time, the legislature codified the holdings of this court on the quasi-judicial nature of 12-521. L. 1987, ch. 66, § 5. The new relevant part of the statute provides:

"The action of the board of county commissioners shall be quasi-judicial in nature. The board of county commissioners shall consider the impact of approving or disapproving the annexation on the entire community involved, including the city and the land proposed to be annexed, in order to insure the orderly growth and development of the community. The board shall make specific findings of fact and conclusions determining whether such annexation or the annexation of a lesser amount of such area causes manifest injury to the owners of any land proposed to be annexed, or to the city if the annexation is disapproved. The findings and conclusions shall be based upon the preponderance of evidence presented to the board." K.S.A. 1990 Supp. 12-521(c).

What of decisions by the board to permit annexation under 12-520c? If they are legislative in nature only, then the board need not consider the use that the proposed land is to be put, or at least that consideration is not reviewable by us. However, if the requirement in K.S.A. 12-520c(a)(3) that "[t]he board . . . find and determine that the annexation of such land

will not hinder or prevent the proper growth and development of the area or that of any other incorporated city located within such county" is quasi-judicial in nature, then the board would have to consider the planned use of the area.

As noted above, this case has been considered on appeal before. The trial court had held that plaintiffs, as owners of adjacent property, had no standing to appeal. A divided Court of Appeals affirmed, holding:

"In cases of a proposed annexation of land not adjoining the city, an adjoining owner of the property to be annexed who contests the anticipated use of the property annexed is not aggrieved by the annexation order and, therefore, has no standing pursuant to K.S.A. 12-520c(c) to challenge the proposed annexation. *The adjoining owner's remedy lies instead with a challenge of the issuance of the special use permit which must be obtained by the owner of the property annexed prior to commencing the contested use.*" 13 Kan. App. 2d 734, Syl., 779 P.2d 463 (1989). (Emphasis supplied.)

On petition for review, this court reversed. This court held that the adjacent landowners do have standing. This court held that in drafting the statutory mandate that the BOCC consider whether the annexation would "hinder or prevent the proper growth and development of *the area*," the legislature meant more than just the land to be annexed, and, therefore, an aggrieved landowner includes adjoining landowners who object to the annexation.

This court did not, however, consider whether the BOCC's finding was quasi-judicial.

In order for an appeal by an adjoining landowner to be meaningful, the landowner would have to be able to challenge more than mere statutory authority or procedure. It is implicit in this court's first opinion in this case that the BOCC acts in a quasi-judicial capacity in determining that the annexation of the land will not hinder or prevent the proper growth and development of the area.

A finding that annexation will not hinder proper growth is more than just a legislative decision that annexation is advisable. It is analogous to finding that annexation will not cause manifest injury, which is a judicial finding.

A further factor for interpreting 12-520c(a)(3) as quasi-judicial is the policy set forth by the special legislative committee that

recommended the bill. The committee was concerned with the fact that individual property owners did not have sufficient rights, under existing law, to challenge annexation decisions. Interpreting 12-520c in light of this policy, the committee must have intended that 12-520c decisions should have meaningful review by the courts, thus expressing a legislative intent that the finding is quasi-judicial.

If the finding is quasi-judicial, should the BOCC consider the proposed land use? Defendants argue that the answer is no, because this would usurp the function of the city zoning authority, and that plaintiff's remedy lies with the city. This is unpersuasive. The city officials making the decision on how to zone the land do not represent the residents in outlying areas. For the residents of outlying areas to have a voice in the land use, there must be some initial consideration by the BOCC.

The proposed use or the reason for the requested annexation must be considered by the BOCC because the use or reason for annexation will affect the future growth of the area. In almost every case where there has been a request for island annexation, there will be a proposed use.

Here, the landowner, Holland, wants to do something specific with the land. What the landowner does will affect its neighbors. What the landowner does could either hinder or promote development. As such, it must be a factor in the BOCC's determination of whether to grant permission for annexation when a specific land use has been proposed.

The BOCC did hear testimony on land use. However, the chairman had instructed that it was not relevant. Michael P. Howe, staff attorney for the City of Lenexa, stated:

" 'Finally, I must advise that your decision regarding the annexation request must remain completely independent of the pending Holland Corporation request for a Special Use Permit on this land. While the issue of the proposed immediate and long-term use of this property may be considered by the governing body of Lenexa and by the Board of County Commissioners in reaching its decision on the annexation, the decision to approve or deny this annexation should not have any bearing on the proposed Special Use Permit. That decision must be based upon your quasi-judicial analysis, findings, and conclusions with regard to the Kansas Supreme Court *Golden* factors and in compliance with the city's Special Use Permit Ordinance.

Likewise, a decision to approve or deny the Special Use Permit request shall not have any effect upon this annexation decision.' "

Howe said he wanted to make it clear that Lenexa had the authority and responsibility to make land use decisions.

John Gardner, attorney for Cedar Creek Properties and Ash Grove Cement Company, made certain additions to the record, and asked how a decision could be made on the effect that annexation would have on surrounding property without considering land use. Larry Winn, attorney representing Mr. and Mrs. Miller, property owners adjacent to the proposed annexation area, said that land use should be considered since this was not a case of abstract speculation about possible use in the distant future. Fred Logan, an attorney representing another landowner adjacent to the city, testified that he felt that the best land use for the region would be commercial and residential and that he opposed the annexation because it would hinder development. John Anderson, Jr., an attorney for Robert Anderson, whose land borders the tract, also argued that land use should be considered.

The city attorney responded that the piece of property must be annexed on its own merit. Commissioner Lingle stated that the question of island annexation was totally unrelated to the zoning question and she moved to approve the motion. The final statement before the vote was by Chairman Nolte, who cautioned that this was not an appropriate arena for the zoning question and the vote for annexation should not necessarily be taken as support for the zoning. He said the zoning issue would be considered by the Planning Commission and officials of the City of Lenexa. The motion was approved unanimously.

Interestingly enough, the only real testimony presented concerning land use was presented by Tom Phillips, Director of Community Development for Lenexa. He told the BOCC that the area in question had great future potential and that the area to be annexed had a wooded character and a rolling terrain and that, "[b]ecause of those characteristics, it is possible that that could be developed into an office campus similar to Corporate Woods."

Obviously, this testimony did not mislead anyone, because everyone at the meeting was aware that the intended use for the property was a limestone quarry. Thus, the record shows the

BOCC heard at least some testimony concerning land use. It is very apparent, however, that the BOCC did not consider land use in making its decision and that it discouraged, if not prevented, introduction of evidence concerning the proposed land use. The BOCC's refusal to consider land use was contrary to the legislative intent and purpose of K.S.A. 12-520c and there is no evidence regarding land use because the BOCC refused to consider the issue.

The case is reversed and remanded with directions to the trial court to set aside Resolution No. 86-88.

McFARLAND, J., dissenting: I would affirm the district court. The proposed annexation herein is under K.S.A. 12-520c. A condition of any annexation petition under the statute by a city is that *"[t]he owner or owners of the land petition for or consent in writing to the annexation of such land."*

As we stated in *City of Lenexa v. City of Olathe*, 233 Kan. 159, 164, 660 P.2d 1368 (1983):

"The general purpose of the annexation statutes is to protect the rights of landowners against unilateral action by a city in annexing their land. *Clarke v. City of Wichita*, 218 Kan. at 348; *Grandon v. City of Hutchinson*, 6 Kan. App. 2d at 899. Because all the land involved here was land which the owners petitioned the city to annex, this general objective has been served."

In the *City of Lenexa* case there was a defect in the publication notice under K.S.A. 12-523 at issue. We held:

"If that were the only objective the publication requirement in K.S.A. 12-523 would be redundant. However, the publication requirement is there. It can be assumed the legislature intended publication to be of some importance and not merely a useless or meaningless act when it passed K.S.A. 12-523. *Herd v. Chambers*, 158 Kan. 614, 628, 149 P.2d 583 (1944).

" 'Publication' refers to 'An advising of the public; a making known of something to them for a purpose.' Regarding the publishing of ordinances publication means 'printing or otherwise reproducing copies of them and distributing them in such a manner as to make their contents easily accessible to the public.' Black's Law Dictionary 1463-64 (3rd ed. 1933). The definition reveals the purpose behind the publication requirement. The objective of K.S.A. 12-523 is to inform the public of the city boundaries as a result of annexation. Thus, for publication of an annexation ordinance to properly serve its purpose the public must be accurately informed of what land is to be annexed." 233 Kan. at 164.

The *City of Lenexa* case was one of a number of annexation cases that arose out of Johnson County at a time when various municipalities in the county were experiencing rapid growth and were hungrily eyeing undeveloped areas in the county. Each city was concerned that its future growth would be stymied by annexation policies of the other cities. Happily, this problem has been resolved by an agreement whereby the county has essentially been divvied up for future annexation. It is undisputed that the tract before us is in Lenexa's portion. Ultimately, if annexed to any municipality, the tract will be part of Lenexa. If the petition is approved by this island annexation procedure, the tract will become part of Lenexa before its boundaries become contiguous with those of that city. But for emphasis it is repeated, this is not unilateral annexation—the landowner has consented to the annexation of its property.

I believe this fact restricts the issues. K.S.A. 12-520c(a)(3) provides:

"The board of county commissioners of the county find and determine that the annexation of such land will not hinder or prevent the proper growth and development of the area or that of any other incorporated city located within such county."

The requirement that the annexation not hinder or prevent the proper growth and development of any other city is not involved herein. We are confronted only with whether or not the *annexation* will hinder or prevent proper growth and development in the area. The annexation, itself, is apparently not a problem with any of the "contras" herein. It is the anticipated use of the property upon annexation which has caused the neighboring property owners to arm themselves with staves and pitchforks. Yet the objected-to use, a rock quarry, asphalt plant, etc., is the subject of a pending special use permit proceeding now on appeal to the district court. I believe that is the proper forum for the controversy herein.

In the matter before us, the "hindering or preventing" determination is confined to the annexation itself. Here, the proposed use is upfront and known. In many instances it would not be. Let us assume the 328 acres had been owned and farmed for many years by a Miss Annie Purvis. She petitions Lenexa for

annexation for the stated reason she had always had a hankering to be a Lenexa resident. What would be the scope of the "hindering or preventing" determination? It would be confined simply to how the annexation of the Purvis tract by Lenexa would affect the area. Forgetting about the agreement among the various municipalities for the moment, let us assume the Purvis tract, called tract A, lies much closer to Overland Park than to Lenexa. If the Purvis tract lies between tract B and Overland Park, granting the annexation could seriously hinder and certainly delay development of tract B. The extension of Lenexa services to the area could be 20 or 30 years away. Overland Park might be ready to expand its services within five years. Certainly, this factor would be extremely important in determining whether or not to grant annexation to Lenexa. This scenario underscores the problem with considering the proposed use of the property in determining whether or not to grant the annexation petition. Let us further assume Miss Purvis' wish to be part of Lenexa is granted. Six months later, she petitions Lenexa for a special use permit to operate a rock quarry on the property. Even if it could be established that operation of a rock quarry had been her real goal all along (she had a lucrative option contract with the Holland Corporation in the drawer which predated the annexation proceedings), this fact could never be used to invalidate the annexation. The irate adjoining landowners would have their forum in the special use permit proceedings.

The fact that the proposed use is "up front" in the case before us, coupled with the fact Lenexa has granted the permit (which is on appeal at the present time) should not, in my opinion, expand the issues in the annexation to include those properly in the special use permit proceedings. As the district court held in its memorandum opinion, to interject the proposed usage into the annexation proceeding improperly transfers Lenexa's zoning prerogatives to the board of county commissioners.

I can well understand the adjoining landowners' concerns herein, but their forum is the special use permit proceedings, not the annexation proceedings. I would affirm the district court.