No. 68,123

CITY OF TOPEKA, KANSAS, *Appellant,* v. SHAWNEE COUNTY BOARD
OF COUNTY COMMISSIONERS, *Appellee.*

(845 P.2d 663)

Opinion filed January 22, 1993.

*James M. Kaup,* of Gilmore & Bell, of Topeka, argued the cause, and *Vernon L. Jarboe,* of the same firm, was with him on the brief for appellant.

*Larry E. Gregg,* of Hamilton, Gregg, Barker & Johnson, of Topeka, argued the cause, and *John R. Hamilton* and *Linda P. Jeffrey,* of the same firm, were on the brief for appellee.

*Steven R. Wiechman,* of Topeka, was on the brief for *amicus curiae* Kansas Association of Counties.

*William Hergenreter,* of Shaw, Hergenreter, Quarnstrom & Kocher, of Topeka, was on the brief for *amicus curiae* Mission Township.

*Donald L. Moler, Jr.,* of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

Six, J.: This is a first impression annexation case construing certain 1987 amendments to K.S.A. 12-521. The City of Topeka (City) challenges an order of the Board of Commissioners of Shawnee County (Board) denying the City's petition to annex lands adjacent to the southwest corner of Topeka (the Sherwood area). The City appealed the Board's denial of the annexation petition to the district court. The district court's affirmance of the Board's order is now before us. The two issues are: (1) whether the district court applied the proper standard of review, and (2) whether there was substantial evidence to support the Board's conclusion. Our jurisdiction is based on K.S.A. 20-3018(c) by transfer under our own motion.

The applicable standard of review requires us to first determine whether the district court observed the requirements placed upon it and then conduct a similar review of the Board's action. *In re Appeal of City of Lenexa,* 232 Kan. 568, 576, 657 P.2d 47 (1983). The appropriate district court standard of review is analyzed as an issue in the opinion.

We find no error and affirm.

## Facts

The City, in 1991, filed a petition with the Board to annex the Sherwood area. The Sherwood area consists of approximately 2,482 acres with an estimated population of 4,922 persons. The population of the area is projected to grow 10 to 15 percent over the next five years. The area is: (1) surrounded on two sides by the southwest corner of the City; (2) primarily residential, with few commercial businesses and no industrial development; and (3) characterized by having less than 1 percent of the land devoted

to agricultural use, with 81 percent of the land finally platted and 4 percent of the land subject to pending preliminary plats. The City's service plan would replace the services currently provided by Mission Township and the Sherwood Improvement District with City services.

On August 14-15, 1991, a public hearing on the proposed annexation was held before the Board. Evidence and arguments were provided by approximately 30 different witnesses. At the hearing, the substance of the City's service plan was explained by the city attorney. The various portions of the plan were supported by testimony and explanations from the City.

The City requested not less than a week to respond in writing to the comments made by annexation opponents at the August 14 hearing. The Board decided to conclude the hearing on August 15. The City objected to not being given more time to prepare its response. The City submitted a six-page letter on the 15th responding to the previous day's comments in opposition to annexation.

The Board determined that the service plan submitted by the City contained the K.S.A. 12-521(a) requirements. Additionally, the Board determined that:

"Governmental services are provided in the area by Shawnee County; Mission Township and the Sherwood Improvement District. All three units of government have improvement projects to maintain the streets and storm-drain system. The area is served by on-site private sewer systems and a County sewer district. Water service for the area proposed to be annexed is provided by the City of Topeka. Nonresidents of Topeka are assessed a seventy percent (70%) surcharge on water sold to them. Law enforcement is provided by the Sheriff's Department and fire protection is provided by Mission Township Fire Department. The City's subdivision regulations apply to the subject area because it is located within three (3) miles of the City limits."

The Board found in resolving the disputed anticipated costs of annexation that:

"The proposed annual cost to extend City services to the area proposed to be annexed is $980,250, based on 1990 numbers. The capital costs, annualized over twenty (20) years, would be $235,250. . . .

"The total annualized costs, including capital expenditures is $1,418,745. This figure is arrived at by adding the $203,245 the City will lose annually from not having its seventy percent (70%) surcharge for providing water to the area to the noncapital annual costs of providing services to the area.

This figure is then added to the annualized capital costs ($235,250) for a total of $1,418,745 in annual expenses. Total annual revenues received for providing these services to the subject area would be $1,324,652, a net annual cost to the City of $94,093."

The Board concluded: "The City does not demonstrate that it will provide and maintain services to the area to be annexed at a level equal to or better than the level of services being provided before annexation."

The Board found that property taxes within the Sherwood area would increase by approximately 30 to 35 percent. Additionally, the valuation of property in Mission Township would decrease by approximately 63 percent, and the tax impact upon the property remaining within Mission Township would be negative and substantial. The Board also determined that "[p]roperty taxes within the City of Topeka will increase to provide services proposed in a manner which is equal to or greater than the services received by residents in the area proposed for annexation."

The Board determined: "1. . . . that manifest injury will result to the owners of land proposed to be annexed by the City of Topeka. 2. . . . that no manifest injury will result to the City of Topeka if the petition is disapproved." By a two to one vote the Board denied the City's petition for annexation.

The district court concluded: "The evidence and testimony submitted to the Board provided a relevant substantial basis for the Board's findings and conclusions. Therefore, the decision of the Board was neither arbitrary, nor capricious, and that decision is affirmed."

## The District Court's Standard of Review

The City argues that the Board's determination must be quasi-judicial. The 1987 amendments to K.S.A. 12-521 included the statement that "[t]he action of the board of county commissioners shall be quasi-judicial in nature." K.S.A. 12-521(c). The City observes that prior to the 1987 amendments, we had determined that a county board was acting in both a legislative and a quasi-judicial capacity when it decided whether to grant or deny a city's annexation petition. See *City of Lenexa,* 232 Kan. at 575. When a board determined the advisability of an annexation proposal, it acted in a legislative capacity. However, when it determined manifest injury, the board was exercising a quasi-judicial function.

*City of Lenexa,* 232 Kan. at 575. For a discussion of judicial review of annexation, see Shultz, *Kansas Annexation Law: The Role of Service Plans,* 40 Kan. L. Rev. 207, 249 (1991).

According to the City, the two-fold nature of a board's decision meant that district courts were to apply two different standards of review to the board's determination. We have explained the review standards to be used by a district court when it examines a board's annexation action:

"[T]he reviewing court is limited to considering whether, as a matter of law, (1) the board acted fraudulently, arbitrarily, or capriciously, (2) the board's order is supported by substantial evidence, and (3) the board's action was within the scope of its authority. [Citations omitted]. . . .

"The judicial review of the Board's determination of the *advisability* of the annexation, however, is the review of the legislative function. The duty of the district court . . . is limited to a determination of whether the Board has the statutory authority to enter the order which it made. [Citations omitted.]" *City of Lenexa,* 232 Kan. at 576.

The City argues that the legislature amended K.S.A. 12-521 in 1987 with full awareness of our holdings but did not codify our characterization of the board's role in determining advisability of proposed annexations. The legislature directed the board to "render a judgment." K.S.A. 12-521(d). The City insists that the legislature did not describe any part of the board's decision as legislative in character.

The City reasons that the district court in the case at bar applied the wrong standard of review because it did not consider the Board's action to be entirely quasi-judicial. The City declares the district court's consideration of the impact of annexation upon Mission Township proves that the wrong standard of review was used. According to the City, a board's finding that annexation would negatively affect areas outside the land proposed for annexation is totally irrelevant *except* as to how that negative impact relates to the board's consideration of manifest injury to (1) the area proposed to be annexed and/or (2) the city.

The Board emphasizes that the district court recognized that the general purpose of Kansas annexation law was the protection of the rights of landowners against unilateral annexation. The Board asserts that the district court set out the appropriate standard of review. We agree.

The district court recited the quasi-judicial standard of *City of Lenexa*, 232 Kan. at 575-76. The Board did not make a separate legislative finding of advisability, distinguished from its quasi-judicial findings of manifest injury. The district court did not apply separate standards of judicial review to separate legislative and quasi-judicial determinations. The district court reviewed the decision of the Board as a quasi-judicial decision.

The City insists that the Board could only determine manifest injury to residents of the proposed annexation area and to the City. The City emphasizes a single sentence of K.S.A. 12-521 and interprets it out of context. The City's reasoning discards the purpose of subjecting annexations to review and resolution by the board of county commissioners. The argument suggests an attempt to evade the express wording of K.S.A. 12-521.

K.S.A. 12-521(c) indicates that the board

"shall consider the impact of approving or disapproving the annexation on *the entire community involved, including* the city and the land proposed to be annexed, in order to insure the orderly growth and development of the *community.* . . . In determining whether manifest injury would result from the annexation, the board's considerations shall include, *but not be limited to,* the extent to which the *following criteria* may affect the city, the area to be annexed, the residents of the city and the area to be annexed, *other governmental units providing services to the area to be annexed,* the utilities providing services to the area to be annexed, and any other *public* or private *person,* firm or corporation *which may be affected* thereby:

. . . .

"(11) effect of the proposed annexation on the city and other adjacent areas, *including, but not limited to,* other cities, fire, sewer and water districts, improvement districts, *townships* or industrial districts." (Emphasis added.)

The legislative intent of K.S.A. 12-521 is to allow the board to hear testimony as to the advisability of certain annexations. A determination is to be made considering the impact of the annexation on the entire community involved, including the city, in order to insure the orderly growth and development of the community. In making that determination, the board's considerations shall include, but not be limited to, 14 designated criteria described in K.S.A. 12-521(c) and the extent that such criteria may affect certain entities. The board must make specific written findings of fact and conclusions based on a preponderance of the evidence, determining whether the annexation would cause man-

ifest injury to the owners of land in the area proposed to be annexed or to the city if the annexation is disapproved. Requiring the board to make the manifest injury findings does not negate the remaining requirements of the statute that the board consider the impact of the annexation on the entire community involved.

*Amicus curiae* League of Kansas Municipalities (League) endorses the City's interpretation of the 1987 K.S.A. 12-521 amendments. The League asserts that it submitted Senate Bill 246 [L. 1987, ch. 66, § 5, now K.S.A. 12-521] with the intent to change the role of the board to a quasi-judicial capacity. The League suggests that legislative history supports the claim that a board now must function as a quasi-judicial body. We agree.

*Amicus curiae* Kansas Association of Counties (Association) argues that the 1987 amendments contained in K.S.A. 12-521 are a well thought out attempt to balance the competing political interests of cities and counties. The Association reasons that the quasi-judicial function of the board is not exclusive of the legislative function. The Association advances the observation that both the legislative function and the quasi-judicial function of the board are carried out in the hearing process. Separate meetings are not called and a declaration made that the meeting is quasi-judicial or legislative. According to the Association, good minds cannot and should not become impervious to the balance of needs of the people or the need for responsive local government.

The Association emphasizes political electoral reality, observing that courts should not substitute for county commissioners who act as elected representatives and are able to observe and hear those who testify. We agree with the Association's observation on the limited role of the judiciary in annexation matters. The Association accents board responsibility by citing *Cedar Creek Properties, Inc. v. Board of Johnson County Comm'rs,* 249 Kan. 149, 158, 815 P.2d 492 (1991) ("city officials making the decision on how to zone the land do not represent the residents in outlying areas").

The district court followed the appropriate standard of review. Granted, language from *City of Lenexa* referencing "legislative determination of advisability" was quoted. See 232 Kan. at 583. However, the district court then proceeded to (1) discuss the fact that manifest injury "is, and always has been, a quasi-judicial

function of the board" and (2) present the definition of manifest injury in great detail. The standard of review that we have said should be used when evaluating the manifest injury determination (see *City of Lenexa,* 232 Kan. at 576) is explicitly set forth within the district court's memorandum opinion wherein the district court observes:

"In this case, the City has not challenged the statutory authority of the Board to deny the advisability of the proposed annexation. There is no claim that the Board acted outside the scope of its authority, and there is no allegation of fraud. The only remaining issues subject to this judicial review are whether the Board acted arbitrarily and capriciously, and whether the Board's denial was supported by substantial evidence."

Thus, the legislative/advisability review, which centers on statutory authority to enter the order of annexation, was not conducted by the district court because the issue of statutory authority was not argued.

The district court identified and applied the substantial evidence definition we acknowledged in *City of Lenexa,* 232 Kan. at 584, by observing:

"In determining whether or not substantial evidence exists to support the findings of the Board, it is not the function of this Court to reweigh the evidence, but rather, only to look at the evidence which supports the finding and determine whether or not that evidence is substantial. Evidence which might have supported a contrary conclusion is not relevant to this determination. If there is evidence in the record which supports the Board's findings, and if that evidence is substantial, then the decision must be affirmed."

We do not agree with the City's assertion that the trial court's acceptance of the Board's consideration of the impact of annexation upon Mission Township necessarily proves the wrong standard of review was used. The City's interpretation is strained. An examination of K.S.A. 12-521 in its totality indicates that the legislature intended a variety of factors to be relevant to the Board's decision. Legislative intent is to be determined from a general consideration of the entire act. Our duty, as far as practicable, is to harmonize different statutory provisions to make them sensible. *Todd v. Kelly,* 251 Kan. 512, 516, 837 P.2d 381 (1992).

## Standard of Review—Substantial Evidence Analysis

The City contends that the district court committed a second standard of review error because it accepted evidence in support of the Board's order denying annexation that did not meet the substantial evidence test. The City doubts that a reasonable person would accept comment from one side of a dispute when the comment was (1) not under oath, (2) not subject to cross-examination, (3) from a person with a financial interest, and (4) not subject to a meaningful rebuttal. The City complains that the district court relied on certain evidence, *i.e.*, the self-interested statements of property owners in the Sherwood area and the residents' alleged experts, without determining whether the evidence was substantial.

The City reasons: (1) The Planning Commission found that the proposed annexation was compatible with the relevant land use plans for the area; (2) the Board observed that the Sherwood area was highly urbanized and that urbanization would continue; and (3) the only objective substantial evidence presented to the Board supported annexation. The City states that it is not asking us to rule that all members of the public who testify at a hearing must be sworn. Rather, the City urges us to rule that the legislative designation of K.S.A. 12-521 as quasi-judicial requires the truthfulness of evidence to be tested either by being under oath or by being subjected to cross-examination or rebuttal. According to the City, only evidence that has been sworn, cross-examined, or rebutted may carry the label "substantial." We do not agree.

The Board responds by observing: (1) The City presented a six-page rebuttal letter on August 15, which was significantly expanded upon by presentation of the city attorney, (2) none of the testimony offered on behalf of the City was sworn, and (3) all of the witnesses who appeared at the hearing were subject to cross-examination or questions from the Board during the hearing.

The fact that testimony and information were obtained by the Board through the public hearing process does not diminish the ability of the Board to rely upon that information in making its determination. If the evidence presented was relevant and of substance, and was of a type that a reasonable person would accept as being sufficient to support a conclusion, then the Board

could properly act upon it. The legislature did not intend to impose formal judicial procedural requirements on annexation proceedings. We rejected a cross-examination requirement as a due process prerequisite in *In re Petition of City of Overland Park for Annexation of Land*, 241 Kan. 365, 371, 736 P.2d 923 (1987).

The City's suggestion that its evidence should be entitled to greater credibility because it was not based upon self-interest is faulty. A self-interest analysis places the dependability of the City's own evidence in question. The Board observes that the City has desired to annex the Sherwood area for years. According to the Board, the number of errors in the service plan raises questions regarding the City's credibility.

The issue for review is whether the Board's decision was supported in the record by substantial evidence. The fact that the persons who testify are biased does not render the testimony insubstantial. A large percentage of the testimony in any annexation proceeding is presented by people who either desire a specific outcome or are motivated by self-interest. The Board has a responsibility to assess the credibility of the witnesses and reach a judgment.

### The Arbitrary and Capricious Analysis

The City contends that the Board's action was arbitrary and capricious. The City correctly notes that under the standard of review of quasi-judicial actions, the Board's decision must be examined to determine whether it was arbitrary or capricious. The City relies on *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 687 P.2d 603 (1984). In *City of Shawnee*, we reasoned that whether the Board acted arbitrarily and capriciously in denying Shawnee's annexation petition depended entirely on whether the Board's conclusion of manifest injury was based on substantial evidence. 236 Kan. at 21.

K.S.A. 1991 Supp. 12-521(c) mandates that the board consider, but not be limited to, 14 criteria in making the manifest injury determinations:

"In determining whether manifest injury would result from the annexation, the board's considerations shall include, but not be limited to, the extent to which the following criteria may affect the city, the area to be annexed, the residents of the city and the area to be annexed, other governmental

units providing services to the area to be annexed, the utilities providing services to the area to be annexed, and any other public or private person, firm or corporation which may be affected thereby:

(1) Extent to which any of the area is land devoted to agricultural use;

(2) area of platted land relative to unplatted land;

(3) topography, natural boundaries, storm and sanitary sewers, drainage basins, transportation links or any other physical characteristics which may be an indication of the existence or absence of common interest of the city and the area proposed to be annexed;

(4) extent and age of residential development in the area to be annexed and adjacent land within the city's boundaries;

(5) present population in the area to be annexed and the projected population growth during the next five years in the area proposed to be annexed;

(6) the extent of business, commercial and industrial development in the area;

(7) the present cost, methods and adequacy of governmental services and regulatory controls in the area;

(8) the proposed cost, extent and the necessity of governmental services to be provided by the city proposing annexation and the plan and schedule to extend such services;

(9) tax impact upon property in the city and the area;

(10) extent to which the residents of the area are directly or indirectly dependent upon the city for governmental services and for social, economic, employment, cultural and recreational opportunities and resources;

(11) effect of the proposed annexation on the city and other adjacent areas, including, but not limited to, other cities, fire, sewer and water districts, improvement districts, townships or industrial districts;

(12) existing petitions for incorporation of the area as a new city or for the creation of a special district;

(13) likelihood of significant growth in the area and in adjacent areas during the next five years; and

(14) effect of annexation upon the utilities providing services to the area and the ability of those utilities to provide those services shown in the detailed plan."

The City observes that the Board found 10 of the 14 criteria supported annexation of the Sherwood area. The district court confirmed that criteria 1, 2, 3, 4, 5, 6, 10, 12, 13, and 14 all supported annexation. According to the City, criteria 1, 2, 3, 4, 10, and 13 are more important to the annexation decision than other criteria. The City does not suggest that a board is required to engage in a numerical comparison of the criteria that support annexation versus the criteria that are contrary to annexation. The City asserts that a quasi-judicial process cannot allow total dis-

cretion on the part of the decision maker with respect to how, or whether, one of the 14 criteria compares to another. According to the City, to permit such discretion would subvert the entire K.S.A. 12-521 process. The City submits that the overwhelming evidence supported the community of interest that exists between the Sherwood area and the City and that the annexation was appropriate "in order to insure the orderly growth and development of the community." K.S.A. 12-521(c).

The Board emphasizes that the reviewing court should not reweigh the evidence and that evidence which might have supported a contrary conclusion is not relevant to the determination. The Board reasons that it issued a written fact-finding statement regarding each of the 14 statutory criteria even though the statute did not require that it do so. According to the Board, there is little dispute over the evidence relating to several of the criteria. However, there are disputed factual matters contained in four of the Board's findings which weigh heavily against annexation. These findings correspond to K.S.A. 12-521(c)(7) (costs of government services), (8) (service plan), (9) (tax impact), and (11) (effect on the city, "and other adjacent areas, including, but not limited to, . . . improvement districts"). Generally, the Board argues the primary areas of disagreement relate to the cost estimates for the proposed annexation, the ability of the City to maintain services at a level equal to or better than the level of services provided prior to the annexation, and the impact of the annexation upon the Improvement District and the Township.

The Board's analysis suggests that although the disputed matters relate to only 4 of the 14 listed criteria, it is clear that the statutory annexation scheme places significance on these 4. The Board indicates that several undisputed facts which relate to the contradicted findings justify denial of the annexation petition. For example, regarding number (7) (present cost, government services, and regulatory control), the Board notes:

"No one presented evidence or testimony that existing governmental services in the area to be annexed are inadequate. . . .

". . . Economic growth and development of the area has already occurred without annexation. Necessary infrastructures have already been constructed. Existing zoning regulations are more appropriate for the area than would be those of the City, and the area is already subject to joint health de-

partment regulations, flood plain regulations, and the same Planning Commission approves area plats. In short, existing governmental services are adequate without annexation, and substantial evidence in the record clearly supports this finding."

Regarding number (8) (proposed cost, extent and necessity of governmental services to be provided by the city and the plan), the Board declares that there is no dispute that the proposed annual cost estimate is $980,250. The Board claims that even using the City's own evidence "there would only be approximately $182,000.00 in revenues which exceed costs. In light of an annual budget in excess of $116 million, denial of the annexation petition would not cause a *material* or *significant* loss to the City or its taxpayers." The Board concludes that "[w]ith corrections only to the income figures, the evidence submitted on behalf of the landowners demonstrates that the City would incur a net annual cost of approximately $94,000.00 per year to annex." The Board emphasizes that there is a significant discrepancy between the City's present cost estimates and the estimates for the 1986 annexation plan. Furthermore, the Board argues that the City failed to prove that it has the ability to maintain police, fire, and road maintenance services at a level equal to that provided.

Concerning criterion (9) (tax impact on the City and the area to be annexed), the Board states that there is no dispute regarding the conclusion that the negative tax impact upon property owners within the Sherwood area would be significant because the evidence indicated that property taxes would increase 30 to 35 percent. Also, the valuation of property in Mission Township would decrease by approximately 67 percent. The Board concluded that the tax impact upon Mission Township would be negative and substantial. The Township's loss would be approximately $495,000 out of a total budget of approximately $740,000.

The Board emphasizes that under criterion (11) (effect on city and adjacent areas), the evidence supported the Board's finding that the revenue available to offset anticipated costs would not be sufficient to avoid a tax increase in the City.

The district court's analysis paralleled the Board's analysis. The district court carefully examined the disputed criteria and pointed out the relevant evidence in the hearing record which supported

the Board's determination. Regarding the balancing of the criteria, the district court noted:

"The statute does not require that each criteria be given equal consideration, but only that each criteria be considered, and then, considered only to the extent that the criteria *may* affect the various interested parties and governmental entities. Merely counting the number of criteria supporting annexation and comparing that to the number of criteria weighing against annexation, would be an inappropriate application of the statute. It would also ignore the legislative directive that the commissioners consider the impact of the annexation upon the entire community in order to ensure the orderly growth and development of the community.

"Clearly, the legislature did not intend for the Board to merely count the number of criteria weighing in favor of annexation. The statute gives the discretion to the Board to determine the extent to which the criteria may affect the interested entities. Some of those criteria have a much more significant effect than others, and it is apparent that the Board has the discretion to determine what weight is to be accorded to each."

The district court concluded that, based upon its review of the evidence, the annexation decision was not arbitrary or capricious. We agree. K.S.A. 12-521(c) does not limit the Board's consideration to the 14 criteria. A purely mathematical resolution to annexation based on weighing the count by adding up the 14 criteria pro and con was not intended by the legislature. The significance of individual criteria will vary when applied to different annexations.

In *In re City of Shawnee*, 236 Kan. 1, we reviewed the denial of an annexation petition presented by the City of Shawnee. Regarding the Board's manifest injury determination, we observed that the evidence before the Board was sharply conflicting. Reasonable minds could differ on the question of manifest injury to the affected landowners. It is not our duty, however, to reweigh the evidence or to substitute our judgment for that of the administrative tribunal. We found the Board's denial was supported by substantial evidence and therefore neither arbitrary nor capricious. 236 Kan. at 25.

K.S.A. 12-521(c) was amended in 1987 to require that the board's findings and conclusions on manifest injury shall be based on a preponderance of the evidence presented to the board. Legislative imposition of the preponderance of the evidence requirement does not affect the standard of appellate review.

## Manifest Injury

K.S.A. 12-521(c) requires a county board to determine whether the proposed annexation would cause manifest injury to the property owners in the area. The City reminds us that we have defined the term "manifest injury" as meaning the "imposition of material or substantial burdens upon the landowners without accompanying material or substantial compensating benefits." *City of Lenexa*, 232 Kan. at 584.

The City reasons that (1) the issue of manifest injury to property owners must be placed in context, (2) the fact that property owners subjected to annexation may face increased costs or taxes is *not* the imposition of substantial burdens, and (3) it is only fair and reasonable that those property owners contribute towards the expense of the substantial benefits that they receive from the annexing city. The City cites *City of Georgetown v. Pullen*, 187 Ky. 697, 700, 220 S.W. 733 (1920) (an increase in taxes, by itself, or in comparison with the benefits that property owners would receive, *did not* constitute material injury). The City argues that the district court erred in holding that substantial evidence supported the Board's conclusion that property owners would suffer manifest injury if the annexation were approved.

The trial court's conclusion, based upon an analysis of the record, is as follows:

"In general, the Board's determination that the annexation would cause manifest injury to the owners in the area proposed to be annexed is supported by the undisputed figures relating to increased property taxes, when considered in light of the substantial evidence that the City's plan does not provide for extension of services at a level which is equal to or better than the level of services provided prior to annexation. This additional taxation is a material and substantial burden without accompanying material or substantial compensating benefits. Annexation would result in manifest injury to landowners in the area proposed to be annexed."

The Board had the discretion to weigh the evidence as it saw fit. The district court correctly determined that substantial evidence supported the Board's findings.

K.S.A. 12-521(c) also requires county boards to determine whether the denial of the petition would cause manifest injury to the city. The City, in the case at bar, expresses the view that the term "manifest injury" involves greater complexity when ap-

plied to a city than when the impact on property owners is at issue. We do not agree.

The City asserts the purpose of the Kansas annexation law is to provide cities with the legal authority to expand their boundaries. According to the City, if protecting property owners were the ultimate goal of the law, there would be no annexation statutes. The City argues that the term manifest injury, as it relates to a city proposing an annexation, should focus on the extent to which denial of an annexation petition would negatively affect the legitimate interests of a city and the urban community of which the annexed area is proposed to become a part. The City explains that the district court was in error when it determined "manifest injury" with regard to a city has the same meaning as "manifest injury" with regard to the property owners in the area proposed to be annexed.

The City observes that the Board's finding that annexation would create a net dollar cost to the City was beyond the Board's authority because the statute only permits findings regarding manifest injury if the annexation is denied. The City points out that even if denial of the City's annexation petition would have prevented "cost" to the City, the prevention of a burden does not equal a benefit, it only maintains the status quo. The City reasons that there is no room in the present wording of the statute to allow the Board to make a finding that denial of the annexation *would not cause* manifest injury simply because approval *would cause* manifest injury.

The City then argues that "[t]here is no statutory authority for the Board to second-guess whether a city, proposing to annex land, has properly weighed the consequences of such an annexation for its current city residents." Consequently, the City reasons, the Board's failure to make specific findings means the decision was contrary to the autonomy of municipalities that is guaranteed under the Kansas Constitution, art. 12, § 5.

The City states that tax inequities between City residents and Sherwood area residents will continue, absent annexation. Finally, the City takes issue with the Board's determination that annexation would cost the City money. The City contends that the Board and the district court erroneously found that the City would have a deficit of $94,093 as a result of the annexation because

the City would lose $203,245 in revenue from its sale of water to the Sherwood area. The loss of revenue would occur because the City could no longer impose its 70 percent surcharge on the sale of water to nonresidents. The district court concluded that the City would actually be benefited by denial of its annexation petition since it would not suffer a cost of approximately $94,000 in extending services to the Sherwood area. The City asserts that the Board's logic is flawed because the water utility is a separate entity not supported by tax revenues and its revenues do not fund the City. Second, the City says that if lost water revenue could properly be considered, the lost tax support to the City's library and Washburn University is also a factor which the Board arbitrarily did not, but should have, considered. Third, The City contends the Board's logic is faulty because it essentially means that the City must break even on the annexation plan or else manifest injury occurs. Finally, according to the City, the Board and district court are essentially saying that the denial of the petition saved the City money which is a benefit which compensated for burdens caused by the fact that the City could not annex the Sherwood area.

The Board counters by insisting that the City raises a sophistic argument that because there is no evidence of a lack of manifest injury to the City the finding of the Board cannot be supported. According to the Board, the City's argument fails for two reasons. First, without something of evidentiary value to suggest that the City would be manifestly injured, the Board's conclusion that no manifest injury would result is proper. Second, the record contains substantial evidence that there would be no manifest injury to the City if annexation is denied.

In addressing this issue, the district court stated:

"The Board's finding that no manifest injury would be caused to the City if the annexation is disapproved is supported by the substantial evidence in the record which indicates that there would be a significant annual cost of annexation in excess of the estimated annual revenue. Moreover, this finding is supported by the expert testimony of C. Bickley Foster in which he concludes, among other things, that there is no need for the city of Topeka to annex this area; that the area does not need additional services from the city of Topeka; that the area can survive without annexation; and that the County and the City would be better served in the long run by continuing the present development of the subject area."

The testimony provided a basis for the Board's view that the City would suffer injury. The district court evaluated the evidence and reached a similar conclusion. The City raises some important considerations regarding the need for annexation. However, these are considerations that should be evaluated by county boards and municipal governments. Appellate courts should not reweigh the evidence. The decisions of the Board and of the district court are supported by substantial evidence.

Affirmed.