No. 95,162

DILLON REAL ESTATE CO., INC., MISSION TOWNSHIP, SHERWOOD IMPROVEMENT DISTRICT, AND STATE OF KANSAS *ex rel.* PHIL KLINE, ATTORNEY GENERAL, *Appellants/Cross-appellees,* v. THE CITY OF TOPEKA, *Appellee/Cross-appellant.*

(163 P.3d 298)

Opinion filed July 27, 2007.

*David E. Watson,* of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, argued the cause, and *John R. Hamilton,* of the same firm, and *David Davies,* assistant attorney general, were with him on the briefs for appellants/ cross-appellees.

*Edward L. Bailey,* of Cosgrove, Webb & Oman, of Topeka, argued the cause, and *Susan L. Mauch,* of the same firm, was with him on the briefs for appellee/ cross-appellant.

The opinion of the court was delivered by

NUSS, J.: This case arises out of the City of Topeka's efforts to unilaterally annex property pursuant to K.S.A. 12-520. The property is located within both the Mission Township and the Sherwood Improvement District, a district created by Shawnee County pur-

suant to K.S.A. 19-2753. Dillon Real Estate Co., Inc. (Dillon) owns part of the annexed property.

The City's attempt greatly relies upon consents to annexation filed by Dillon's predecessors approximately 8 years earlier. Dillon, however, did not consent. Along with the improvement district and the township, it filed suit to contest the annexation. After considering competing motions for summary judgment, and reconsidering its earlier ruling, the district court essentially allowed part of the improvement district to be annexed. Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer from the Court of Appeals on our motion).

The parties have raised numerous, often overlapping, issues. Our recasting of the issues, and our accompanying holdings, are as follows:

1. Does K.S.A. 12-520(c) bar the City's efforts to annex part of the improvement district? Yes.
2. Is K.S.A. 12-520(c) unconstitutional? No.
3. Does K.S.A. 12-536 nevertheless bar plaintiffs' suit contesting the annexation? No.

Accordingly, we reverse the district court.

## FACTS

By ordinance, in December 2003 the City Council of Topeka (City) announced its annexation of approximately 10 acres at the southwest corner of the intersection of 29th Street and Urish Road. The property is within both the Mission Township and the Sherwood Improvement District, an improvement district as defined by K.S.A. 19-2753 and created by Shawnee County before January 1, 1987. Dillon Real Estate Co., Inc., (Dillon) owns part of the annexed property.

According to the ordinance, the City proceeded via K.S.A. 12-520(a)(1) (land is platted and some part adjoins the city) and (a)(7) (consensual annexation by the owner). It relied upon consents filed by Dillon's predecessors approximately 8 years earlier to satisfy the requirements of 12-520(a)(7) and thus to obtain the advantages of 12-520a(f)—eliminating as prerequisites to annexation the City's

resolution of annexation, public notice, and public hearing. Accordingly, the City did not provide notice of its action to, among others, Dillon, the improvement district, the township, or the county.

Dillon itself did not consent. Along with the improvement district and the township, in January 2004, it filed suit to contest the annexation. The State later joined them as an intervenor. Dillon and its fellow plaintiffs (collectively Dillon) principally argued that K.S.A. 12-520(c), which concerns annexation of improvement districts, barred the City's efforts.

On competing motions for summary judgment, the district court ruled that K.S.A. 12-520(c) was constitutional but that Dillon's predecessors in title consented to annexation. Because such consent was recorded with the register of deeds, Dillon took the property with notice and could not object to the annexation. It also ruled that the improvement district, the township, and the State lacked standing to challenge the City's actions.

The district court reconsidered its initial order and revised its ruling, holding that the improvement district and the State—but not the township—had standing. It further ruled that K.S.A. 12-520(c) only precluded annexation of the entire district, and that the City was not prohibited from annexing a part of it.

Plaintiffs appealed, and the City cross-appealed.

## ANALYSIS

The essential facts are not in dispute. Additionally, our analysis will require statutory interpretation. Consequently, our review of the district court's summary judgment decision is de novo. See *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 419-20, 109 P.3d 1241 (2005) (summary judgment review where facts undisputed); *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 819, 104 P.3d 378 (2005) (statutory interpretation is a question of law providing for de novo appellate review).

Issue 1: *K.S.A. 12-520(c) bars the City's efforts to annex part of the improvement district.*

For a city to alter its boundaries by annexation, it must follow Kansas statutes. *Crumbaker v. Hunt Midwest Mining, Inc.*, 275

Kan. 872, 884, 69 P.3d 601 (2003) ("[T]he power of a municipality to alter its boundaries by annexation is vested absolutely and exclusively in the legislature, and this power is therefore completely controlled by statute, *i.e.*, K.S.A. 12-519 *et seq.*"). As a result, the "failure of a city to comply with requirements of the legislative enactment which gave it power and authority to annex territory nullifies the attempted annexation ordinance." *In re Petition of City of Shawnee for Annexation of Land,* 236 Kan. 1, 12-13, 687 P.2d 603 (1984).

Dillon argues that K.S.A. 12-520(c) flatly prohibits the City from proceeding under K.S.A. 12-520 procedures to unilaterally annex any land, including Dillon property, contained within the Sherwood Improvement District that has existed since before 1987. The statute states:

"(c) No city may annex, pursuant to this section, any improvement district incorporated and organized pursuant to K.S.A. 19-2753 *et seq.*, and amendments thereto, or any land within such improvement district. The provisions of this subsection shall apply to such improvement districts for which the petition for incorporation and organization was presented on or before January 1, 1987."

Consequently, we must interpret K.S.A. 12-520(c), a question of law subject to de novo review. The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. *Johnson v. Westhoff Sand Co., Inc.,* 281 Kan. 930, Syl. ¶ 14, 135 P.3d 1127 (2006). We must give effect to that intent, which the legislature is initially presumed to have expressed through the language it used. When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there. *Board of Leavenworth County Comm'rs v. Whitson,* 281 Kan. 678, 685, 132 P.3d 920 (2006).

The language of K.S.A. 12-520(c) is clear: "No city may annex, pursuant to this section, [*i.e.*, K.S.A. 12-520] any improvement district" whose creation request was presented before January 1, 1987. Accordingly, we conclude that cities are prohibited from unilateral annexation under K.S.A. 12-520 in situations involving certain improvement districts. Commentators agree. See Parnacott,

*Annexation in Kansas*, 70 J.K.B.A. 28, 31 (November/December 2001) ("A city also cannot use K.S.A. 2000 Supp. 12-520 to annex any improvement district where the petition for the creation of the district was presented to the county commission on or before January 1, 1987."); see also Heim, Kansas Local Government Law, Sec. 2.67, p. 2-19 (3d ed. 2005) ("If an improvement district was incorporated and organized on or before January 1, 1987, pursuant to K.S.A. 19-2753 *et seq.*, none of the territory may be annexed by a city unilateral annexation. See K.S.A. 12-520[c].").

Because no city may annex certain improvement districts via K.S.A. 12-520, we must disallow annexation based upon landowner consents under subsection (a)(7) of 12-520 and which, as here, take advantage of the lessened requirements under K.S.A. 12-520a(f), *e.g.*, no public hearing. To annex, the City instead must proceed through other means, *e.g.*, the county approval annexation process in K.S.A. 12-521. See Parnacott, 70 J.K.B.A. at 31 ("However, annexation of such a district can be sought under the county approved annexation process authorized by K.S.A. 12-521.").

This alternative to unilateral annexation, K.S.A. 12-521, provides in relevant part in subsection (a): "Whenever the governing body of any city deems it advisable to annex *land which such city is not permitted to annex under K.S.A. 12-520* . . . the governing body may annex such land as provided by this section." (Emphasis added.) Such an annexation includes additional protections: *inter alia*, a city's annexation petition to the Board of County Commissioners, notice, public hearing, and an annexation decision by the board. See K.S.A. 12-521(a)-(d); Parnacott, 70 J.K.B.A. at 33-35.

While the district court agreed that K.S.A. 12-520(c) barred the City's annexation of the entire improvement district through the procedures of K.S.A. 12-520, it also held that the subsection did not prohibit annexation of just part of the district. This interpretation is belied by the clear language of subsection (c): "No city may annex, pursuant to this section, any improvement district . . . *or any land within such improvement district.*" (Emphasis added.)

Because subsection (c) bars a city from annexing an improvement district with consents provided under K.S.A. 12-520(a)(7), the City's remaining arguments which rely upon the consents, *e.g.*,

that they run with the land, are likewise barred. Under subsection (c), the purported consents simply are unenforceable for annexation purposes. See *Crumbaker*, 275 Kan. at 884 ("[T]he power of a municipality to alter its boundaries by annexation is . . . completely controlled by statute."); *Cf. K. P. Rly. Co. v. Peavey*, 29 Kan. 169, Syl. ¶ 1 (1883) (A contract made in violation of a statute is void, and agreements contrary to the policy of the statute are equally void.).

As for the City's related claim that Dillon is somehow estopped from raising K.S.A. 12-520(c) as a defense to the argument that its predecessors consented, we hold that estoppel is inappropriate in this context. As our Court of Appeals stated regarding a similar issue in *Perry v. Goff Motors*, 12 Kan. App. 2d 139, 145, 736 P.2d 949 (1987):

> "It is the general rule that validity cannot be given to a void contract through any principle of estoppel. [Citations omitted.] To do so in the present case would run afoul of the express language of K.S.A. 1986 Supp. 8-135(c)(7) rendering a sale in violation of the statute 'void.' If we were to estop the Perrys from asserting the illegality of the sale, *we would in effect validate a sale that the legislature has not only deemed void, but has declared to be illegal as well. . . . Estoppel should never be used to defeat public policy.*" (Emphasis added.)

Similarly, if we were to estop Dillon from asserting K.S.A. 12-520(c) as a bar and to allow Dillon's predecessors' consents to prevail in the instant case, we would in effect defeat the public policy contained in the statute: "No city may annex, pursuant to this section, any improvement district . . . or any land within such improvement district."

Finally, even if we were to agree with the City that Dillon is somehow estopped from proceeding, the State has standing to make the statutory arguments because it "has an interest in seeing that the will of the legislature is not disregarded." *State v. Lawrence*, 80 Kan. 707, 103 Pac. 839 (1909) (allowing State to maintain injunction action to ensure public officer did not violate an official duty). We note that the State filed a motion to intervene 1 month after it learned of the litigation; did not raise new arguments, delay the proceedings, or prejudice adjudication of the rights of parties; and had a particular interest in the constitution-

ality of K.S.A. 12-520(c). We therefore hold that the district court's grant of permission for the State to intervene was not an abuse of discretion. See *Mohr v. State Bank of Stanley*, 244 Kan. 555, 561-62, 770 P.2d 466 (1989) (discretion abused when no reasonable person would agree with the district court).

We hold that subsection (c) bars the City's efforts to unilaterally annex part of the improvement district through K.S.A. 12-520.

Issue 2: *K.S.A. 12-520(c) is constitutional.*

Although we have held that K.S.A. 12-520(c) bars the City's annexation, the City argues that the statute is special, nonuniform legislation lacking a rational basis and was designed simply to protect the Sherwood Improvement District from annexation by the City. In short, it argues that subsection (c) violates Article 12, § 5(a) of the Kansas Constitution, which states:

"The legislature shall provide by general law, applicable to all cities, *for* the incorporation of cities and *the methods by which city boundaries may be altered,* cities may be merged or consolidated and cities may be dissolved." (Emphasis added.)

Like statutory interpretation, the constitutionality of a statute is a question of law subject to our de novo review. *State v. Whitesell*, 270 Kan. 259, 268, 13 P.3d 887 (2000). As the party asserting a statute's unconstitutionality, the City's burden is a "weighty one." *Barrett v. U.S.D. 259*, 272 Kan. 250, 255, 32 P.3d 1156 (2001). "This is as it should be for the enacted statute is adopted through the legislative process ultimately expressing the will of the electorate in a democratic society." 272 Kan. at 255. Consequently, while our review is de novo, we have often held:

" ' "A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it maybe struck down. [Citations omitted.] 'This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute.' " ' [Citations omitted]." *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 276, 75 P.3d 226 (2003).

Article 12, § 5—which was originally adopted in 1861—is the constitutional provision currently granting cities home rule power. It was completely amended in 1959, effective July 1, 1961. Among other things, the changes included adding the language "general law, applicable to all cities, for . . . the methods by which city boundaries may be altered" contained in § 5(a). See *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 325, 955 P.2d 1136 (1998).

Since the creation of § 5(a), few Kansas cases have addressed statutes which allegedly violate it. The annexation case of *Board of Riley Co. Comm'rs v. City of Junction City*, 233 Kan. 947, 667 P.2d 868 (1983), however, provides considerable guidance. There, the court addressed the problem of the City of Junction City attempting to annex Fort Riley, a federal military installation of approximately 98,000 acres. In response to Junction City's announced annexation intentions in February 1982, House Bill 3166 was introduced in April 1982, passed the next day by both legislative chambers, signed into law 5 days later by the governor, and 2 days later published in the Kansas Register to become effective that day.

The bill, which later became K.S.A. 12-529, forbade annexation of military reservations, *i.e.*, army installations, as of 4 months before the bill became law. It stated in relevant part:

"(a) The governing body of any city shall not annex any territory of a United States military reservation.

"(b) The provisions of this section shall be applicable to any annexation proceedings commencing after December 31, 1981.

"(c) For purposes of this section, 'military reservation' means an installation of the United States under the supervision and control of the secretary of the department of the army."

Among other things, Junction City alleged that K.S.A. 12-529 violated both Article 12, § 5 and Article 2, § 17 of the Kansas Constitution. As was in effect then, and now, Article 2, § 17 provides:

"*All laws of a general nature* shall have a uniform operation throughout the state: *Provided*, the legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to any one or more of such counties or urban areas such powers of local government and con-

solidation of local government as the legislature may deem proper." (Emphasis added.)

The *City of Junction City* court upheld the district court's ruling that the statute was valid and constitutional, quoting the district court's lengthy decision with approval. The district court noted the difference between the language of the two constitutional sections:

" 'While Article 12, Section 5(a) speaks in terms of "general laws," Article 2, Section 17 begins with "all laws of a general nature." The difference historically attributed to the two phrases was recently noted in *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 631 P.2d 222 (1981), involving a challenge to the constitutionality of a state statute of limitations:

"The difference between a law of a general nature [as in Article 2, Section 17] and a general law [as in Article 12, Section 5(a)] is that the subject matter of the former must be one common to the people of the entire state, while *all that is required of the latter is uniformity of operation.*" ' " (Emphasis added.) 233 Kan. at 958 (citing *Stephens,* 230 Kan. at 124-25).

Accord *Richardson v. Board of Education,* 72 Kan. 629, 632, 84 Pac. 538 (1906) ("A law of a general nature is one whose subject-matter is common to all the people of the state. . . . General laws are those 'which apply to and operate uniformly upon all members of any class of persons, places, or things, requiring legislation peculiar to themselves in the matters covered by the laws.' [Citation omitted.]").

Based upon *Stephens,* which in turn relied upon *Richardson,* the *City of Junction City* district court concluded: " 'Article 12, Section 5(a) therefore [simply] requires that all laws dealing with annexation . . . operate uniformly with respect to cities." 233 Kan. at 958. In holding that K.S.A. 12-529 was constitutional, the district court—as again approved by the Supreme Court—stated:

" 'When the statute affects a limited class, the law does not run afoul of the uniformity provision if the class is a natural one and has a reasonable relation to the subject matter involved. . . .

'The classification in the instant case is rational. It applies to at least four cities which touch or soon may touch the Fort Riley military reservation, even if it be assumed that the only military reservation to which the statute has applicability is Fort Riley. . . . The City contends that the statute does not relate to Fort Leavenworth, and that it could not apply to McConnell Air Base since that base is under the jurisdiction of the Secretary of the Air Force rather than the Secretary of the Army. Assuming these contentions to be true the Constitution does not

require that state statutes apply uniformly to all military reservations—the requirement is that they apply uniformly to all [4] affected *cities.*'" 233 Kan. at 959.

Several points of guidance for the instant case can be gleaned from *City of Junction City*. First, the court stated that Article 12, § 5(a) requires that all laws dealing with annexation of cities operate uniformly with respect to cities. 233 Kan. at 959. As a result, we initially observe that the statutes at issue in both cases contain language referencing application to all cities. K.S.A. 12-529(a) provides: "The *governing body of any city* shall not annex any . . . United States military reservation." (Emphasis added.) K.S.A. 12-520(c) in turn provides: "*No city* may annex . . . any improvement district." (Emphasis added.)

After the court's expression of this statement, it necessarily concluded that K.S.A. 12-529(a) operated uniformly to satisfy Article 12, § 5(a). It reached this conclusion despite the fact that the statute affected few cities: "'It applies to at least four cities which touch or soon may touch the Fort Riley military reservation.'" 233 Kan. at 959. Indeed, the court acknowledged that "[a] long and time-tested line of Kansas authority conclusively establishes that legislation may apply to only one governmental entity, and still be "of uniform operation," if the class created by the statute is not arbitrary.'" 233 Kan. at 958 (citing cases interpreting Article 2, § 17). The *City of Junction City* opinion is not entirely clear on how much of its analysis actually addressed Article 12, § 5(a) versus Article 2, § 17. Nevertheless, Syllabus No. 3 clearly expressed the court's point of law: "K.S.A. 12-529 . . . is not unconstitutional as a violation of either Article 12, § 5 or Article 2, § 17, of the Kansas Constitution." 233 Kan. 947, Syl. ¶ 3.

In the instant case, the parties agree that 33 improvement districts were in existence when K.S.A. 12-520(c) became law in 1987. Nevertheless, the City argues that the statute is a special act because Topeka is the only city affected by it. However, the present situation, *i.e.*, current number of cities affected, is not dispositive of the constitutional issue. As *City of Junction City* summarized *Common School District No. 6 v. Robb*, 179 Kan. 162, 293 P.2d 230 (1956): "'[T]he mere fact that a statute only applies to one

city, one county, or one school district, does not mean that the law is a special law and violative of Section 17, if it is possible that other governmental units *may come within the operation of the act.'* " (Emphasis added.) 233 Kan. at 959.

The *Robb* court admittedly addressed a different article, Article 2, § 17, and its "law of a general nature" language. In *State v. Downs,* 60 Kan. 788, 790, 57 Pac. 962 (1899), however, this court made a similar statement in addressing an attack alleging violation of Article 12, § 5, whose language then included *"general law* for the organization of cities, towns and villages." (Emphasis added.). The *Downs* court stated:

"An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, but which was designed to, and can in all substantial particulars apply to other cities *as they become possessed of the requisite population or other qualification, cannot be regarded as a special act."* (Emphasis added.) 60 Kan. at 793-94.

Just as *City of Junction City* acknowledged that its statute applied " 'to at least four cities which touch or soon may touch, the Fort Riley Reservation,' " and that a law is not a special act, " 'if it is possible that other governmental units may come within the operation of the act,' " 233 Kan. at 959, we acknowledge that cities which may be in the vicinity of the other 32 improvement districts in the state may " 'come within the operation of' " K.S.A. 12-520(c).

A second point of guidance from *City of Junction City* comes from that court's conclusion that the statute was constitutional and operated uniformly for all cities, even though the facts clearly showed that (1) the legislature and the governor quickly passed the law solely in reaction to the Fort's intended annexation by one particular city council and (2) the statute was made retroactive to ensure prohibition of Junction City's intended annexation which had been formally announced earlier. The facts in the instant case are even less helpful to the City of Topeka's position. Accordingly, while through affidavits and legislative conferee materials the City characterizes K.S.A. 12-520(c) as the "Sherwood Amendment," *City of Junction City* suggests that this assertion, even if true, does not necessarily render subsection (c) unconstitutional. More important, there certainly is no retroactivity effectively cutting off all

annexation here. Indeed, the protection from annexation is limited to the 33 improvement districts in existence as of January 1, 1987. And those districts can alternatively be annexed via K.S.A. 12-521.

A third point of guidance from *City of Junction City* comes from the court's ruling that Junction city had failed to establish that K.S.A. 12-529 had no rational basis and the statute was therefore constitutional. In the instant case, the City appears to argue that K.S.A. 12-520(c) does not have a rational basis because the statute allegedly applies only to the Sherwood Improvement District. But as the *City of Junction City* court pointed out in a related context, the issue is not whether statutes uniformly apply to a single entity— there, Fort Riley—but whether the statutes " 'apply uniformly to all affected *cities*.' " 233 Kan. at 959. There, the statute applied uniformly to potentially four affected cities; here, the statute potentially applies uniformly to more than one.

Moreover, as Dillon points out, there is some question as to whether the rational basis requirement even applies to statutes challenged under Article 12, § 5—or just those challenged under Article 2, § 17. We need not answer this specific question because when acting on our constitutional review charge as articulated in *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. at 276, and when applying the rational basis test as articulated in *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 62 P.2d 236 (2003), we hold that K.S.A. 12-520(c) has a rational basis.

As we stated our charge in *Praeger*, 276 Kan. at 276:

" ' "A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. [Citations omitted.] 'This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute.' " ' [Citations omitted]."

And as we stated the two-part rational basis test in *Mudd*, 275 Kan. at 198:

"For a statute to pass constitutional muster under the rational basis standard, it therefore must meet a two-part test: (1) It must implicate legitimate goals, and

(2) the means chosen by the legislature must bear a rational relationship to those goals. [Citation omitted]."

Specifically, we observe that the legislature, through K.S.A. 19-2753, has expressly authorized counties to create improvement districts within their own boundaries. The statute states:

"The board of county commissioners of any county shall have the power, upon a proper petition being presented for that purpose, to incorporate and organize improvement districts within their respective counties, in the manner provided herein."

We hold that it is rational for the legislature to grant to the counties a large measure of control over the improvement districts which they have created and to prohibit unilateral annexation by cities. See Parnacott, 70 J.K.B.A. at 31 (Annexation of an improvement district can be sought under the county approved annexation process authorized by K.S.A. 12-521.). The counties' large measure of control is set forth in K.S.A. 12-521. See K.S.A. 12-521(a) ("The governing body, in the name of the city, may present a petition to the board of county commissioners of the county in which the land sought to be annexed is located. The petition shall set forth a legal description of the land sought to be annexed and request a public hearing on the advisability of such annexation."). See K.S.A. 12-521(c) (the board "shall consider the impact of approving or disapproving the annexation on the entire community involved, including the city and the land proposed to be annexed, in order to insure the orderly growth and development of the community"); see also K.S.A. 12-521(d) (The decision whether to annex requires a majority vote of the county commission after public hearing.).

This holding is also consistent with the intent of K.S.A. 12-521 that we expressed in *City of Topeka v. Board of Shawnee County Comm'rs*, 252 Kan. 432, 438, 845 P.2d 663 (1993):

"The legislative intent of K.S.A. 12-521 is to allow the board [of county commissioners] to hear testimony as to the advisability of certain annexations. *A determination is to be made considering the impact of the annexation on the entire community involved, including the city,* in order to ensure the orderly growth and development of the community." (Emphasis added.)

We further hold that it is rational for the legislature to limit the application of K.S.A. 12-520(c) protection to those districts pre-existing the statute so as to prevent improvement districts being formed for the sole purpose of avoiding annexation. We conclude that the statute not only implicates the two legitimate goals we have stated, but also that the means chosen by the legislature—prohibiting unilateral annexation of improvement districts via 12-520 and instead promoting county approval annexation via 12-521—bear a rational relationship to those goals.

A federal opinion decided 75 years before *City of Junction City*, the case of *Metropolitan Water Co. v. Kansas City*, 164 F. 738 (D. Kan. 1908), also provides some guidance in the related constitutional area of cities' corporate powers. There, the United States District Court of Kansas reviewed challenges under both constitutional sections to legislation allowing certain cities to condemn and take over private waterworks. The relevant portion of the first section, Article 2, §17, is effectively unchanged to today: "All laws of a general nature shall have a uniform operation throughout the state." The second, Article 12, § 5, is comparable to today's § 5(a): Compare the former's "Provision shall be made by *general law* for the organization of cities, towns, and villages" to today's "*general law* . . . for the incorporation of cities.*" (Emphasis added.)

The waterworks company argued that the legislation was a "special act" because the legislation limited the authority to cities of the first class having a population of more than 50,000 inhabitants—and Kansas City was the only city large enough to meet the population requirement. In effect, the company argued that the legislation could not be a "general law" or a "law of a general nature." However, citing general Kansas Supreme Court case law, including *State v. Downs*, 60 Kan. 788, the court upheld the act as valid.

We hold, based upon Kansas case law, that K.S.A. 12-520(c) is constitutional.

Issue 3: *K.S.A. 12-536 does not bar plaintiffs' suit contesting the annexation.*

The City argues that even if K.S.A. 12-520(c) is constitutional, K.S.A. 12-536 limits the application of 12-520(c) to those annexa-

tion cases without landowner consent. See, *e.g.*, *City of Topeka v. Board of Shawnee County Comm'rs*, 252 Kan. 432 (City's 1991 attempt to annex Sherwood Improvement District without landowner consent denied by county commission and affirmed by Kansas Supreme Court). Conversely, the City argues that "K.S.A. 12-536 bars the application of K.S.A. 12-520(c) in the case of consenting landowners" such as in the instant case. In short, it claims that 12-536 trumps 12-520(c) in these situations. Because we must interpret these statutes, our review of this issue is de novo. See *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 819, 104 P.3d 378 (2005).

K.S.A. 12-536 states:

"The provisions of this act [*e.g.*, K.S.A. 12-520(c)'s bar to annexing certain improvement districts] shall be applicable to any annexation made without the written consent of or petition by the landowners and which is not completed before the effective date of this act [April 9, 1987—when published in the Kansas Register]. For the purpose of this section 'completed' means the date of the publication of the annexation ordinance as provided by K.S.A. 12-523 and amendments thereto."

Basically, the parties differ on whether K.S.A. 12-536 expands, or contracts, the reach of K.S.A. 12-520(c). The City essentially reads "only" into K.S.A. 12-536, so that the statute contracts 12-520(c) and effectively states: "The provisions of this act shall [*only*] be applicable to any annexation made without the written consent of or petition by the landowners and which is not completed before the effective date of this act." By contrast, Dillon essentially reads "also" into K.S.A. 12-536 so that the statute expands K.S.A. 12-520(c) and effectively reads: "The provisions of this act shall [*also*] be applicable to any annexation made without the written consent of or petition by the landowners and which is not completed before the effective date of this act." In short, Dillon argues that K.S.A. 12-536 does not provide when the annexation act is inapplicable; rather, it provides those additional situations in which the act will apply somewhat retroactively.

In support of its position, the City argues that in K.S.A. 12-536 the phrase "the provisions of this act" refers exclusively to Senate Bill 246 (L. 1987, ch. 66), which included among its substantial

changes and 15 sections the addition of K.S.A. 12-520(c). The City concludes that all "[t]he 1987 changes in the annexation laws were designed to give the landowner the opportunity to be heard. K.S.A. 12-536 returns that option to the landowner by allowing consents to annexation to be valid."

In response, Dillon first points out that if "this act" means only Senate Bill 246, *i.e.*, if all the substantial revisions found there applied only to those cases where consent was not given, then the consensual annexation, as here, would be governed by pre-1987 annexation laws unchanged by the bill, or not governed at all. As an example, it shows that this bill also included, as section 10, the new statute: K.S.A. 12-534. That statute provides when an annexation consent will bind future title holders and states in relevant part:

"Any written agreement entered into between a city and the owner of land proposed to be annexed by the city which conditions the delivery . . . or . . . services to the land . . . on the *consent of the owner* to annexation on a later date *shall be deemed to be a sufficient consent to annexation* under K.S.A. 12-520 . . . by the owner *and any successors in interest*." (Emphasis added.)

According to Dillon, the City's suggestion that K.S.A. 12-536 limits application of SB 246's section 10 (K.S.A. 12-534) to only cases where consent was not given is absurd because K.S.A. 12-534—which deals with consents—then would have no application. Dillon reminds us that the legislature is presumed to not enact useless or meaningless legislation, and that our interpretation of a statute should avoid absurd or unreasonable results. See *Hawley v. Kansas Dept. Of Agriculture*, 281 Kan. 603, Syl. ¶ 9, 132 P.3d 870 (2006).

Dillon also points out that the City has labeled K.S.A. 12-520(c) as the Sherwood Amendment and asserted that the subsection was legislatively intended, and drafted specifically, to prevent the City from annexing that particular improvement district. It argues that if this characterization of subsection (c) is assumed to be true, then K.S.A. 12-536 should be interpreted consistent with this characterization. In support, Dillon asserts that the City's earlier annexation had been contested by the Sherwood Improvement District, *i.e.*, it was an "annexation made without the written consent of or

petition by the landowners." K.S.A. 12-536. Dillon also suggests that the legislature, as it had done in *City of Junction City* with Fort Riley and Junction City, was making the protectionist legislation somewhat retroactive, *i.e.,* "The provisions of this act shall be applicable to any annexation . . . which is not completed before the effective date of this act [April 9, 1987]." K.S.A. 12-536. Dillon asserts that if the 1987 amendment was meant to resolve the Sherwood controversy, in order to be effective it would have to be retroactively applicable to the City's earlier efforts taken without the district's consent. Accordingly, it reasons that K.S.A. 12-536 should not read *"only* be applicable" but *"also* be applicable to any annexation made without the written consent of or petition by the landowners and which is not completed before the effective date of this act."

We begin our analysis by agreeing with the implication contained in the parties' arguments: K.S.A. 12-536 is ambiguous. If a statute is plain and unambiguous, the court must give effect to it as it is written. See *Hawley,* 281 Kan. at 618. But, if ambiguity exists, the court " 'is not limited to the mere consideration of the language employed, but may also look to the historical background of the enactment, the circumstances accompanying its passage, the purposes to be accomplished, and the effect the statute may have under the various suggested constructions.' " *City of Lenexa v. City of Olathe,* 228 Kan. 773, 776, 620 P.2d 1153 (1980) (determining legislative intent in amending annexation statutes), *modified on other grounds on rehearing* 229 Kan. 391, 625 P.2d 423 (1981). Additionally, legislative intent is to be determined from a general consideration of the entire act. Our duty, as far as practicable, is to harmonize different statutory provisions to make them sensible. *City of Topeka v. Board of Shawnee County Comm'rs,* 252 Kan. at 440.

The parties have not provided, nor have we found, any legislative history concerning K.S.A. 12-536. Nor have we found any Kansas published legal references to the statute outside of the parties' briefs to this court.

At the outset, we agree with one of Dillon's arguments. The City reasons that the language of K.S.A. 12-536 actually limits applica-

tion of SB 246's many provisions—including, *e.g.*, K.S.A. 12-534 and 12-520(c)—to those cases where consent was not given. Under this blanket rationale, K.S.A. 12-534, which specifically deals with consents, would appear to have no application. Our statutory interpretation should avoid absurd or unreasonable results. *Hawley v. Kansas Dept. Of Agriculture,* 281 Kan. 603. This result from the City's broad reasoning does not support the connected argument that it makes based upon the same rationale: that K.S.A. 12-536 also limits K.S.A. 12-520(c)'s protections of certain improvement districts to nonconsensual annexations.

We also hold that the City's interpretation results in multiple statutory trumping, which seems an unlikely legislative intent. We first observe that K.S.A. 12-521 provides a general rule: Certain annexations require county approval. K.S.A. 12-520(a) then provides some exceptions to that rule, *e.g.*, landowner consents to annexation, with attendant eliminated requirements, *e.g.*, public notice. However, subsection (c) of K.S.A. 12-520 then provides an exception to the exceptions: K.S.A. 12-520 cannot be the vehicle for annexing improvement districts created before a certain date. Essentially, the City's position is that K.S.A. 12-536 constitutes an exception to the exception (K.S.A. 12-520[c]) to the exception (12-520[a]) to a general rule of county approval of certain annexations (K.S.A. 12-521). We additionally deem it much more likely that the ultimate trumping exception would be contained in the statutes dealing with the general annexation authority and its attendant exceptions, *i.e.*, K.S.A. 12-520 through 12-521, or at least in close numerical proximity to them, as opposed to the distant statutory placement of K.S.A. 12-536.

K.S.A. 12-536 appears to be a legislative reaction to a particular situation, *i.e.*, like Junction City's attempted annexation of Fort Riley several years earlier, or as Dillon suggests, reaction to the City's longstanding desire to annex the Sherwood Improvement District which could manifest itself at any time. *Cf. City of Topeka v. Board of Shawnee County Comm'rs,* 252 Kan. at 442 ("The Board observes that the City has desired to annex the Sherwood area for years."). But this is speculation. For whatever the legislature's reason, we conclude from reviewing K.S.A. 12-534 and the

multiple trumpings scenario, that the legislature simply wanted to expand the protections of the annexation act, not to contract them, by also applying them to those nonconsensual annexations which were not yet completed by April 9, 1987, the effective date of the act. In this respect, the 1987 bill also shares some characteristics with the 1982 bill in *City of Junction City*: making it somewhat retroactive to expand its protections against annexation by a city. We therefore conclude that K.S.A. 12-536 does not limit the application of K.S.A. 12-520(c) to those annexation cases without landowner consent and consequently does not bar Dillon's suit contesting the City's annexation of part of the improvement district.

We have examined the parties' other arguments and find they have no merit, or are moot, or both.

Because K.S.A. 12-520(c) bars the City's unilateral annexation efforts, and because the City failed to otherwise proceed in a legislatively authorized way, *e.g.*, via K.S.A. 12-521, its annexation is a nullity. See *In re Petition of City of Shawnee for Annexation of Land,* 236 Kan. 1, 12-13, 687 P.2d 603 (1984) ("failure of a city to comply with requirements of the legislative enactment which gave it the power and authority to annex territory nullifies the attempted annexation ordinance").

Reversed and remanded with directions to vacate the judgment for the City and to enter judgment for the plaintiffs.

MCFARLAND, C.J., and LUCKERT, J., not participating.

LARSON, S.J., and HILL, J., assigned.